Stoudinger *v*. City of Newark.

STOUDINGER

*v.*

CITY OF NEWARK.

28 187
48 334
28 187
58L 670
28 187
60 365
60 383

1. When, by legislative grant, the location and construction of sewers is committed to the judgment of municipal authorities, so long as they keep within their powers and do not abuse them, their acts are not subject to judicial revision.

2. If land be dedicated to the public for the purposes of a street, and it is accepted, the public right is complete, and the land may be appropriated to any use to which a street acquired in any other mode can lawfully be put.

3. The streets of a city may be lawfully used for the construction of sewers, whether the public right was acquired by condemnation or dedication.

On order to show cause why an injunction should not issue. Hearing on bill, answer and affidavits.

NOTE.—In *Glasby* v. *Morris,* 3 *C. E. Gr.* 72, it was held that express authority must be conferred by a charter in order to construct sewers. An act of the legislature which expressly authorizes a city to turn a natural stream into a sewer, is constitutional, *Butler* v. *Worcester,* 112 *Mass.* 541 ; and a plaintiff must establish some particular injury to himself arising therefrom, to entitle him to relief. *Washburn Co.* v. *Worcester,* 116 *Mass.* 458; and see *Workman* v. *Worcester,* 118 *Mass.* 168.

*Mr. Joseph Coult,* for motion.

*Mr. Henry Young, contra.*

THE VICE-CHANCELLOR.

The government of the city of Newark, by an ordinance duly adopted on the 7th day of July, 1876, ordained that a sewer should be constructed from the westerly line of High street to the Passaic river, and that the waters of Mill brook, on First river, should be diverted from their present channel into the sewer and carried by it to the Passaic river. The sewer, for most of the distance between the termini named, is to be laid in Clay street. The charter gives the municipal government full power to lay out, regulate and repair streets, to construct sewers and drains in any part of the city, and, in the construction of any sewer or drain, to take and appropriate or divert any stream of water it may deem expedient and necessary. Compensation is, of course, to be made to the persons entitled to the water diverted, or whose lands may be taken for sewerage purposes. Clay street was dedicated by the complainant many years ago to the public for the purposes of a highway, and has been accepted by the city, graded, flagged and curbed. The complainant owns and resides on a lot extending along the southerly line of Clay street, a distance of two

As to the right of a city to connect a sewer with, or to discharge it into, a natural stream, see *Munn* v. *Pittsburgh,* 40 *Pa. St.* 364; *O'Brien* v. *St. Paul,* 18 *Minn.* 176; *Thurston* v. *St. Joseph,* 51 *Mo.* 510. In *Proprietors, &c.* v. *Lowell,* 7 *Gray* 223, it was held that a right to enter "streets and private lands," for the construction of sewers, would not authorize a city to discharge its sewage into a canal, or to lay sewers upon lands purchased by the corporation for the use of their canal; and see *Hildreth* v. *Lowell,* 11 *Gray* 345; *N. Y. C. R. R. Co.* v. *M. G. L. Co.,* 63 *N. Y.* 326; *Columbus* v. *Hydraulic, &c. Co.,* 33 *Ind.* 435. An act of the legislature which authorizes the building of a market in a street, without providing compensation to the owner of the fee, is unconstitutional. *State* v. *Laverack,* 5 *Vr.* 201. A corporation formed under a general act, has no right to lay gas pipes in a country highway, without the consent of the owner of the fee, or compensation made to him. *Bloomfield Gas Light Co.* v. *Calkins,* 62 *N. Y.* 386. In the same case a *query* was raised,

hundred and twenty-seven feet.   He seeks to have the con-
struction of the sewer in Clay street enjoined, because such
use of the street is not within the rights or powers conferred
upon the public by the dedication.   He contends that the
fee of the street is still in him ; that by the dedication the
public merely acquired a right of free passage, and, as an
incident of this right, to make such repairs as were neces-
sary to render travel safe and convenient, and that any
other use of it is unauthorized, and cannot be made law-
fully without compensation to him.   On the argument, the
application was put distinctly and exclusively on the ground
that the city authorities were seeking to appropriate the
street to a use not within the purposes of the dedication,
and, therefore, they should be restrained until they acquire,
by grant or condemnation, the right they intend to exercise.

The location of sewers, their size and capacity, and the
material of which they shall be constructed, are matters
which, by the charter, are committed to the judgment of
the municipal authorities, and so long as they keep within
their power, and do not abuse it, their acts are not subject
to judicial revision.   When the legislature grants to a
municipal corporation the power to control and regulate
the use of its streets, it invests it with a part of its sovereign
power, and any regulation adopted by the corporation, in
the proper exercise of its powers, is as much beyond the
control of the courts as a valid enactment of the legislature

whether the streets of a city could be so appropriated without such
consent or compensation.

That a land owner on a street already opened to the public, is enti-
tled to no additional compensation for the construction of a sewer
therein, see, also, *Kelsey* v. *King*, 32 *Barb.* 410, 33 *How.* 39 ; *State* v. *Lav-
erack*, 5 *Vr.* 201, 206.   The owner of the fee cannot maintain an action
against town authorities for placing in the highway a reservoir for the
purpose of retaining water with which to sprinkle the highway.   *West*
v. *Bancroft*, 32 *Vt.* 367.   The erection of a monument in or near the
center of a street two hundred and seventy-eight feet wide, may be
authorized by municipal authorities, without the consent of the owner
of the fee.   *Tompkins* v. *Hodgson*, 2 *Hun* 146.   An action lies by an
adjacent land owner against a city for so constructing a culvert that it
was insufficient to carry off a natural stream. *Rochester Co.* v. *Rochester*,
3 *N. Y.* 463.   So, in *Union* v. *Durkes*, 9 *Vr.* 21, a city was held liable for

of the state. *Milhau* v. *Sharp*, 17 *Barb.* 435. It is only when it transcends its power that the courts are authorized to interfere. *Weil* v. *Ricord*, 9 *C. E. Gr.* 169.

To entitle the complainant to the aid he asks, the court must hold, as a sound proposition of law, that a city government, having authority to control the use of its streets and construct sewers, cannot lawfully use them, whether acquired by condemnation or dedication, for the construction of sewers, without first having them specially condemned for that purpose. Whether the public right is acquired by condemnation or dedication is quite immaterial. If land is dedicated to the public for the purposes of a street, and there is an acceptance, either by formal act or user, the public right is complete, and the land may be appropriated to any use to which a street, acquired in any other mode, can lawfully be put. The public have the same rights now in Clay street they would have had, had the public easement been acquired by condemnation. The bill expressly declares Clay street was dedicated to the public for the purposes of a street; the public right in it is just as extensive as it would have been if it had been acquired by grant. It is a public street for all purposes, and may be so used and appropriated.

---

damages caused by not building a sewer or drain to carry off a natural water-course which, by the opening of a street, was turned upon plaintiff's land. *Aliter*, as to mere surface water, *Ibid.*, and see *Flagg* v. *Worcester*, 13 *Gray* 601 ; *Wilson* v. *New York*, 1 *Denio* 595 ; *Vincennes* v. *Richards*, 23 *Ind.* 381. The owner of the fee of a street is entitled to an injunction to prevent an *individual*, who had obtained the consent of the highway board, from laying water pipes in the street in front of plaintiff's house. *Goodson* v. *Richardson*, 9 *L. R.* (*Ch.*) 221. A permission to lay a drain, granted in 1852 by the municipality of Elizabeth, which at that time possessed no legislative right to lay sewers, was simply a license to disturb the surface of the street, and conferred no right to maintain such drain as against the owner of the fee. *Glasby* v. *Morris*, 3 *C. E. Gr.* 72. So, the common council of Trenton were held to have no authority to grant to an individual license to lay a railroad track across a public street, for his own use. *State, Montgomery* v. *Trenton*, 7 *Vr.* 79. Where a company, by grant from the state, held lands under water, subject to the public right of navigation, such right was held not to prevent the continuance of an injunction for a trespass thereon. *Morris Canal Co.* v. *Jersey City*, 11 *C. E. Gr.* 294.—REP.

The authorities upon this subject seem to stand with entire uniformity against the rule it would be necessary to adopt to give the complainant the aid he asks. *Cone* v. *Hartford*, 28 *Conn.* 362, the only case cited on the argument in support of the complainant's theory, I understand to declare distinctly that a power granted to a municipality to make and repair streets, confers authority to construct sewers in the streets, which may be exercised whenever the condition of the streets, or the protection of the public health, renders it expedient in the judgment of the local government. It is further held, that such use of the highway is clearly within the purposes for which they are established, and that the compensation made to the land owner for his land includes damages for such use.

Equally decisive are the utterances of Judge Gray (now chief justice) of Massachusetts, and Judge Harris of the supreme court of New York. The first says, in *Boston* v. *Richardson*, 13 *Allen* 146: " Whenever land is taken for public use as a highway, and due compensation made, the public have a right to make any use of the land, directly or incidentally, conducive to the enjoyment of the public easement, and such uses clearly include the making of culverts, drains and sewers under the highway, for the cleansing of the streets and the accommodation of the inhabitants on either side." And Judge Harris, in *Chapman* v. *Albany and Schenectady R. R.*, 10 *Barb.* 360, says: " A street may be used in any way which shall best promote the interest and business of the city. What will so promote those interests and business is to be determined by the municipal authorities, to whom the control of the streets is committed. Sewers and drains may be constructed and water and gas pipes laid in them. The only restriction upon the power of the municipal authorities is that they cannot appropriate them to a purpose incompatible with the ends for which they were established." The same doctrine is declared in *Milhau* v. *Sharp*, 15 *Barb.* 210. And Judge Dillon declares it to be his judgment that a municipality may lawfully use its streets for the con-

struction of sewers, and that such use is clearly within the public easement. *Dillon's Mun. Cor.* § 544. The same view is expressed by Mr. Angell. *Angell on Highways*, § 216. And this court has twice declared that the building and operation of a horse-railroad in the streets of a city, with the consent of the governing power, is a legitimate use of the highway for the purposes of public travel, and not a taking of private property for public use, within the meaning of the constitution, so as to entitle the owner of the fee to compensation. *Hinchman* v. *Paterson Horse R. R. Co.*, 2 C. E. Gr. 75; *Paterson and Passaic Horse R. R. Co.* v. *City of Paterson*, 9 C. E. Gr. 158.

Were it necessary for the city authorities to justify their action before the courts, their answer, I think, gives a highly satisfactory reason for the diversion of the waters of Mill brook, and also shows they proceeded cautiously and prudently in locating the route of the sewer; but their action in these matters, in my judgment, cannot be reviewed here. The question I have to deal with is, has the city of Newark power to construct this sewer in Clay street, without making further compensation to the complainant? I think it has. The injunction must, therefore, be denied, and the order to show cause discharged.