### The Methodist Episcopal Church of Camden.

*v.*

### The Pennsylvania Railroad Company.

1. Where the owners of land dedicate a street adjacent thereto, and "covenant and agree that said street shall forever hereafter be kept open for the use of" such grantors, their heirs and assigns, their grantees have an appurtenant right of way in such street which cannot be impaired by legislation allowing a railroad company to occupy it, except on the condition of making compensation.

2. A municipality cannot enlarge the rights of a railroad company by giving it terminal rights in a street where, by legislative grant, it is confined to a mere right of passage.

---

*Mr. John W. Wartman* and *Mr. John J. Crandall*, for the complainant.

*Mr. Samuel H. Grey*, for the defendant.

PITNEY, V. C.

Complainant is the owner of a church edifice, in which its congregation worships and conducts other religious exercises, situate on the south side of Bridge avenue, between Third and Fourth streets, in Camden, and it seeks by its bill to be protected against the same sort of injury at the hands of defendant which was considered and dealt with in *Angel* v. *Pennsylvania R. R. Co., 14 Stew. Eq. 316,* and *Thompson* v. *Pennsylvania R. R. Co., 18 Stew. Eq. 870.*

The complainant's church is situate between the Angel property and the Thompson property, and is on the same side of the avenue. After the decision of the latter case the defendant procured from the municipal government of Camden an ordinance vacating the north side or half of Bridge avenue, with an order to move its tracks northward and occupy that part of the street, and leave the southerly half free from encumbrance.

During the pendency of this cause it took up its southerly track which had been laid in 1882. The remaining tracks had been in use for more than twenty years, and the right, as against the complainant to so maintain and use them, thus acquired.

The only right, as against the public, to use the avenue for railroad purposes ever acquired rests in an ordinance or ordinances of the municipality adopted at about the time that the road was built, and the only right, as against the complainant, is by adverse user.

The answer relies upon these ancient ordinances, together with long adverse user, and also upon the recent ordinance vacating the northerly half of the avenue.

The proofs show a decided increase in the frequency of the acts and the intensity of the resulting nuisance for the last few years, and the defence of adverse user fails. On this point I refer to the opinion of Vice-Chancellor Bird, adopted by the court of appeals, in the *Thompson Case, 18 Stew. Eq. 871.* The evidence shows that the use of the edifice for religious exercises and worship was seriously and materially interfered with by the noise of the engines and cars of the defendant used in the man-

ner and for the purposes· described by Vice-Chancellor Bird in·
his opinion in the *Angel Case, 14 Stew. Eq. 317.*

With regard to the ordinance vacating the north half of the·
street, the proofs show that in 1824 the lands on each side of the·
avenue were owned by Chauncey and Lyle as tenants in common,.
who, in a partition deed, dated October 18th, 1824, dedicated·
Bridge avenue, with other streets, to the public, and used lan-
guage which, in my judgment, gave each owner a right of way·
in all its parts. The language is as follows:

" Whereas, in the foregoing deed of partition of the lots of ground in Cam-
den, continued reference is made to divers streets, lanes and alleys without any
description thereof and without any covenant that the same shall remain open·
forever. Now the said Elihu Chauncey and James Lyle, each for himself, his·
heirs, executors, administrators and assigns, covenants, promises, grants and
agrees to and with the other of them, his heirs, executors, administrators and
assigns in the following manner, that is to say, that said Bridge avenue in the·
foregoing deed mentioned is and shall continue to be of the width of one hun-
dred feet, and shall extend from Queen street, westwardly, three hundred and
forty feet towards the river Delaware, and eastwardly, from said Queen street.
to the land of Deborah Cooper, which is the most eastwardly boundary line of
land conveyed by the foregoing deed."

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

[Here follows descriptions of other streets and alleys.]

" Now the said parties hereto do mutually covenant and agree that the said
streets, alleys and avenue in said deed of partition mentioned are of the·
dimensions, courses and distances herein particularly set forth, and that the
same shall hereafter forever be kept open for the use of the said Elihu Chaun-
cey and James Lyle, their heirs and assigns and of the tenants and occupants
of said lots of ground, and at the request of either party the fences now thereon
shall be removed and free ingress and egress allowed through the same and
every part thereof."

The description in the partition deed ran to the side of the.
street, but the title by implication, under *Jonas* v. *Salter,* went·
to the middle. The result is that complainant's title goes to the·
centre line of the street (now, by the recent ordinance, the north·
line), and it has an appurtenant right of way in the whole bed·
of the original avenue.

This right cannot be either destroyed or substantially impaired·
by legislative action, except upon the constitutional condition of·

making compensation. A right of way is property, and as such protected by the constitution.

Further, the municipality has no power either to legalize a private nuisance of the character here in question, or to enlarge the rights of defendant and give it terminal rights where by its legislative.grant it is confined to a mere right of passage. *Pennsylvania R. R. Co.* v. *Angel, 14 Stew. Eq. 329.*

Counsel also relied upon *Beseman* v. *Pennsylvania R. R. Co., 21 Vr. 235,* decided in the Supreme Court after the *Angel* case and before the *Thompson* case, and, after the *Thompson* case, affirmed on error, *23 Vr. 221.* But the opinion of the Supreme Court in the *Beseman* case carefully distinguished it from the *Angel* case, and the opinion of Vice-Chancellor Bird in the *Thompson* case acted on that distinction, and was adopted by the court of appeals with the assent of the judges of the supreme court who took part in the *Beseman* case.

The truth is that the defendant is using, and proposes to continue to use, lands immediately adjoining the complainant's premises, and in which it has a right of way, for the purposes of a terminal yard, in such a way and to such an extent as to seriously interfere with the complainant's enjoyment of them for religious exercises and worship. In this aspect the case is quite within the principles acted upon in the *Baptist Church* cases, *108 U. S. 317, 137 U. S. 568.* I think the complainant is entitled to an injunction.