Budd v. Camden Horse Railroad Co.

HIRAM E. BUDD et al.

v.

THE CAMDEN HORSE RAILROAD COMPANY et al.

[Filed April 27th, 1901.]

1. A municipal corporation which is empowered by its charter to regulate its streets and to prescribe the manner of their use by any person or corporation, has exclusive power to determine in the first instance how the space within the bounds of the highway shall be appropriated to the varied uses of the highway.

2. A general ordinance prescribing a certain width of the sidewalk in avenues of a certain width, is modified by a subsequent special ordinance, making a different disposition of a particularly named avenue.

3. A trolley railway track laid in accordance with the direction of the special ordinance will not be enjoined from operation because its location works inconvenience and injury to the abutting owners.

4. If the municipality has so unreasonably appropriated the divisions of the highway as to work injury to the abutting owners, their remedy is not in equity, but in the courts of law which supervise the action of inferior jurisdictions.

5. A mandatory injunction will not be decreed where the legal rights of the complainants are disputed and unsettled, and where the acts complained of are adequately remediable in the courts of law.

On bill, answer and proofs.

The complainants are the owners of, and operators of, a brickworks and yard, with a frontage of two thousand and sixty-six feet on the north side of Ferry avenue, in the city of Camden, their title running to the middle of the street. The defendants operate a trolley road in that avenue. The complainants allege

that Ferry avenue is a public highway but two rods wide; that the defendants have located a number of their poles to carry their wires outside of the lines of the highway, and on the lands of complainants. They further charge that the rails of defendants' tracks on the north side of Ferry avenue have been so located as to intrude upon and tear up the sidewalk on that side, and that they lie within five and one-half feet of the complainants' building line, while a general ordinance of the city of Camden requires all streets of the width of Ferry avenue to have at least one-quarter of the width set apart for sidewalk. They admit that this location is claimed to have been made by defendants by virtue of a subsequent special ordinance of the city of Camden, consenting and permitting the defendant company to locate their line of track on Ferry avenue, by name, in the manner in which they have placed it, but complainants insist that this ordinance is void. They allege that the conduct of the defendant company is destructive of the value, and prevents them from the use, of their property and causes them irreparable loss. The bill prays that the defendants may be decreed to take down their poles and wires and to remove their tracks from within the line of the sidewalk in front of complainants' property, and to cease operating their trolley line there.

The defendants deny that Ferry avenue is but two rods wide, and aver that it is forty feet wide, and has been so used for sixty years. They allege that no sidewalk or curb line was ever made or laid on Ferry avenue, and they deny that they ever tore up any sidewalk of the complainants. They set out their original charter and the several statutes whereby they came into corporate existence, and added powers, and particularly an ordinance of the city of Camden, passed December 30th, 1896, whereby the city council specially consented and permitted them to construct, maintain and operate a single track railway on Ferry avenue, "the middle line of the railway to be eight and one-half feet northward from the middle line of Ferry avenue, which is the boundary line of the city," &c. They allege that they have constructed and operated their road in accordance with that consent, at great expense, and that complainants stood

Budd *v.* Camden Horse Railroad Co.

by and made no objection until months afterwards, and are thereby now estopped in equity to complain. They deny that they have erected any poles on complainants' lands, or destroyed any of their trees, and aver that all of their poles on Ferry avenue have been erected for years without objection from any-one, and were all erected by lawful authority. They insist that complainants show no equity in their bill of complaint; that their delay has deprived them of any remedy in this court; that they have taken no steps to review the ordinance under which the defendants have built and operated their road; that their remedy, if said ordinance is unlawful, is not in this court, but in a court of law, and the defendants ask the same benefit as if they had demurred to the bill for these causes.

The case has been heard on the pleadings and proofs submitted by the parties.

*Mr. Francis D. Weaver* and *Mr. John W. Wescott,* for the complainants.

*Mr. Edward A. Armstrong,* for the defendant.

GREY, V. C.

The most important ground of complaint is that the defendants have, without authority, located their tracks on the northerly side of Ferry avenue so that they have intruded upon the sidewalk in front of complainants' premises, and thereby interfered with their enjoyment of their property. It is not contended that the tracks have been placed outside of the line of the highway, and have intruded upon that portion of the complainants' lands which is not charged with the public easement. The claim is that the defendants' tracks, though within the lines of the highway, have been so located there as to intrude upon that portion of the highway which is known as the sidewalk.

The complainants contend that, under an ordinance of the city of Camden, passed December 30th, 1886 (*p. 68*), in all streets in that city

35

Budd *v.* Camden Horse Railroad Co.

"of the width of thirty feet and upwards the sidewalks shall be one-fourth of the width of the street on each side thereof in the case of each street respectively."

They admit that, by a subsequent ordinance, permission has been granted to defendants to locate their tracks at a certain place within the highway, which would encroach upon the sidewalk location established by the earlier ordinance, but they insist that this subsequent ordinance is void. The complainants also contend that Ferry avenue was laid out of the width of two rods, and that it has never been widened, and that therefore the sidewalk must be estimated to be of the width of one-fourth of the two rods. The defendants insist that there has been a widening of the northerly half of Ferry avenue, in front of complainants' premises, to twenty feet, by a dedication by one who previously owned the complainants' property. They further insist that they have laid their tracks precisely where the later ordinance directs that they be placed.

It has been determined in this state, by the court of appeals, that a controversy of this sort is a matter to be heard in the courts of law. *Holmes* v. *Jersey City, 1 Beas. 310,* was a suit of the same character as this cause. It was an effort to restrain a municipal corporation from regulating a street, and from setting a curbstone on a proposed line, because of a dispute whether, by a dedication, the street was of one width or another. In that decision the court of appeals declared that a bill of complaint setting up such a case showed no recognized grounds for equitable relief; that the whole matter turned upon a mere question of law; that if such a bill could be entertained, then every act of a municipal corporation by which the property of a citizen is affected, by the opening, paving or grading of streets, the regularity of buildings, &c., might be the subject of an injunction. Under the peculiar circumstances of that case, and because the equity of the bill was not challenged before the chancellor, the court of appeals entertained the suit, but its ruling, that injuries of the character named must be redressed at law, has since been received and acted upon as the law on this subject. *Cross* v. *Morristown, 3 C. E. Gr. 305.*

In the present case the suit is not against the municipality, but against those who, under its ordinance, appropriating the highway to its various uses, have, as complainants claim, injured them. It is quite obvious that if the party so using the highway is not in excess of the privilege given by the ordinance, the remedy for the supposed wrong must be had in the courts of law, where the unreasonableness or wrongfulness of the grant of privilege may be considered and relief given against any oppression.

The defendants in this case challenge the equity of the bill of complaint, and insist that the complainants' case is within the cognizance of the courts of law, where only they can ask for redress.

The primary inquiry here made should go no further than to ascertain whether the injuries set up in the bill of complaint are occasioned by some unauthorized action of the defendants, for which no redress can be had in the courts of law.

The proofs show that Ferry avenue was laid out as a country road in 1825, of the width of two rods, and that its northerly half has since become a part of the city of Camden, the center line of Ferry avenue being the boundary line of that city. The general ordinance of 1886 provides that streets of that city, of the width of thirty feet or more, shall have sidewalks of a width equal to one-fourth of the width of the street. Whether this applies to Ferry avenue at all, when only the northerly half of it lies within the city of Camden, and whether the ordinance requires the computation of width to be made only from the northerly half of Ferry avenue, which is the only part within the city of Camden, was not argued by counsel. Their attention was given wholly, on this phase of the case, to the question whether there had been an additional dedication or not on the northerly half of that avenue, and to its effect upon the width of the sidewalk.

The actual present physical condition of the avenue at the *locus in quo,* as to sidewalk, is undisputedly told by the testimony of the complainant Isaac W. Budd. He states that there is no sidewalk there—meaning, of course, that there is no constructed sidewalk, separated by a curb or other monumental line

from the carriage roadway. He says, speaking of the footway, "it just went promiscuous along there, * * * just like all other country roads—there is no regular side path to it."

Both parties agree upon the location of the center line of the avenue and also upon the place where the defendants have placed their track. The dispute is as to the width of the northerly half of the avenue.

The maps illustrating the location of the defendants' tracks show that whether the width of Ferry avenue be computed at thirty-three feet, as the complainants claim it should be, or at forty feet, as defendants contend, the tracks of the defendants have been so placed that they lie in part within the space within which, allowing one-fourth of the whole highway for sidewalk, the latter may at some future time be constructed.

It is plainly to be seen, therefore, that, taking either view of the width of Ferry avenue, the north rail of the defendants' railway track, located on the north side of Ferry avenue, is laid within the line of the sidewalk on the north side of that avenue, as provided for in the ordinance of December 30th, 1886.

The complainants, in their bill, recognize the fact that the defendants claim to have located their tracks by virtue of the subsequent ordinance of September, 1896, but they deny the efficacy of the ordinance to authorize that location of tracks, claiming that it is void. The defendants justify their location by setting out in their answer that ordinance in full, with its accompanying map. It is entitled

"an ordinance granting consent and permission to the Camden Horse Railroad Company to build, construct and operate a street railway on Vanhook street, Mount Ephraim avenue, Ferry avenue and Newton avenue, in the City of Camden,"

passed September 9th, 1896. It expressly grants consent and permission to the defendant company to build, construct, maintain and operate a single track railroad on Ferry avenue to Mount Ephraim avenue and along Ferry avenue, in front of complainants' property, in these words:

"thence eastward still out Ferry avenue in a line so that the middle line of the said railway shall be eight and one-half feet northward from the middle line of the said Ferry avenue, which is the boundary line of the City of Camden, to Haddon avenue."

All the evidence in the case agrees that the defendants, in locating, constructing and operating their railway in front of the complainants' property, so far as they have built it, have complied with the requirements of the last-named ordinance. The complainants' own surveyor declares that the north track of the defendants on Ferry avenue is correctly described in this language:

"Eastward still out Ferry avenue in a line so that the middle line of said railway shall be eight and one-half feet northward from the middle line of the said Ferry avenue, which is the boundary line of the city of Camden, to Haddon avenue."

He says that, so far as the railway is built, he found it laid on the ground in accordance with that description, and that, so built, it brings the northerly rail within five and one-half feet of complainants' property line, assuming that property line to be parallel with the middle line of Ferry avenue, and to be sixteen and one-half feet northward therefrom.

It must be taken to be established that the defendants have built their road in accordance with the requirements of the ordinance of September 9th, 1896, and this phase of the controversy between the parties is therefore limited to the question whether the ordinance of September 9th, 1896, has any validity to prescribe the location of the defendants' tracks in Ferry avenue. The complainants themselves put their case on this ground. They insist that the ordinance of 1896 is void. If this court is to take any jurisdiction of this case because of the alleged offence against the general ordinance of December 30th, 1886, fixing the width of sidewalks, it must be because the special ordinance of 1896, locating the tracks within the line of the sidewalks, is a nullity. It is therefore important to examine into the authority of the council of the city of Camden to pass such an ordinance.

It should be noted that the complainants do not claim that

the. challenged ordinance seeks to authorize the defendant company to locate its tracks outside· of the bounds of the highway upon that portion of their property not subject to the public easement. Nor is it asserted that the defendants are not authorized to build and operate a trolley line in the streets of the city of Camden. Nor do the complainants claim that, in this case, there was any omission to observe the prerequisites to the passage of the ordinance granting a permission to lay railway tracks and fixing their location, prescribed by the trolley statutes. Nor is there any contention that, in laying the tracks within the bounds of Ferry avenue, they are located in any other place than that directed by the ordinance authorizing their construction. The undisputed proof is that they are laid precisely where that ordinance of 1896 ordered them to be placed. The complainants' complaint is that the ordinance of 1896 is void, because it directs the construction of trolley tracks within a line where a previous ordinance had located a sidewalk, and thus seriously interferes with the complainants' convenient enjoyment of their property, and threatens further injury if the railway be completed on the northern half of Ferry avenue. An inquiry into the power of the city council to pass such an ordinance as that of 1896 will show the rights of the parties.

The revised charter of the city of Camden gives ·to its city council the power to regulate, by ordinance, the streets, highways, avenues, &c., in the said city; to prescribe the manner in which any corporation or persons shall exercise any privilege granted to them in the use or in digging up any street, avenue, highway or alley of that city for any purpose whatever. It also authorizes the city council, by ordinance, to widen, level, grade, curb or re-curb, gutter or re-gutter the streets, avenues, highways and alleys of that city and the sidewalks and gutters thereof, or any of them, or any parts or sections of the same, and to prescribe the manner in which any such work shall be performed. Revised charter of the city of Camden, New Jersey (*P. L. of 1871 pp., 225, 226, parts VII. and VIII.*), declared to be a public act (*p. 260*).

Such a grant of power to a municipal corporation enables

it to determine the respective widths of the street and the sidewalks, and how the space appropriated to each shall be divided between them. *Taintor* v. *Morristown, 4 Vr. 59.* The city council of Camden, therefore, had the power to act upon the subject-matter of appropriating the space within the bounds of the highway to its varied uses. It exercised that power by its general ordinance of December 30th, 1886, prescribing that all streets of a certain class should have sidewalks one-fourth of the width of the highway. The ordinance of 1896 is a special ordinance, granting permission to the defendant company to build and operate a railway upon certain named streets and prescribing the location of its tracks. Such a permission as is given by this ordinance is required by the act regulating the construction, &c., of street railroads. *P. L. of 1896 p. 329.* The ordinance mentions Ferry avenue by name in its title, and in the body of the ordinance as one of the streets to which it is applicable. Its operation is expressly limited to Ferry avenue and the other specially named streets. It has a full preamble reciting the performance of the prerequisites named in the above-named statute of 1896 regarding the construction of street railroads. It consents and grants permission to the defendant company to construct and operate

"a single track railway beginning opposite the east end of the turnout on Ferry avenue near Eighth street, and connecting therewith and extending eastward out Ferry avenue, the middle line of the said track being nine feet northward from the middle line of the present track on Ferry avenue to Mount Ephraim avenue, and thence eastward, still out Ferry avenue, in a line so that the middle line of the said railway shall be eight and one-half feet northward from the middle line of the said Ferry avenue, which is the boundary line of the city of Camden, to Haddon avenue."

The last section declares that all ordinances and parts of ordinances inconsistent with the provisions of that ordinance were thereby repealed.

This ordinance is, in terms, an act of special legislation, appropriating certain parts of Ferry avenue to certain named uses, to which a highway is devoted.

The rule is entirely well settled in this state that general

legislation on a subject must give way to special legislation on the same subject. *Taintor* v. *Morristown, 4 Vr. 61; Mayor of Newark* v. *Freeholders of Essex, 11 Vr. 597 (Court of Errors).* Applying this rule to the subject under discussion, it appears that the council of the city of Camden, upon a matter within the powers granted by its charter, has, in the manner directed by its charter, and in accordance with the provisions of general legislation upon the same subject, granted permission to the defendant company to locate its tracks on the north side of Ferry avenue, and fixed the place where they should be constructed. The defendants have built their railway in exact accordance with the permission.

The special ordinance on this subject must be held to have repealed the previous general ordinance appropriating the lands within the bounds of Ferry avenue to the extent necessary to enable the special ordinance to have effect.

Neither in their answer nor in their argument have the complainants denied that the statutes and ordinances do, in terms, authorize the defendants to do the acts of which complaint is made. The complainants' objection is that the authorization must be held to be void because the acts permitted work an injury to them in their use of the highway. Where the subject-matter is within the jurisdiction of the municipal authorities, and their action is in compliance with the statutory mode prescribed to them, and a privilege thus granted is used within the limitations imposed, it is not a ground for equitable relief that the use of the privilege operates as a hardship upon other persons. If an ordinance be unreasonable in its appropriation of the varied uses to be made of a highway, and works loss or inconvenience to property-holders upon one side of it, their remedy lies in an application to the courts of law, which have power to correct the unreasonable conduct of the municipal body. The supreme court is the supervisor of the action of inferior jurisdictions in all such cases.

There was some claim made in argument that the ownership of the fee in the north side of Ferry avenue gave to the complainants some special rights, as against the defendants' construction and operation of a trolley railway, on the north

side of that avenue, in the matter of access to and use of that highway. It has been settled in this state, by decisions in all the courts, that a street railway is but a variance in the mode of using a highway (*Hinchman* v. *Paterson Horse Railway Co., 2 C. E. Gr. 75; Halsey* v. *Rapid Transit Company, 2 Dick. Ch. Rep. 380*), and that the introduction of the trolley system on city streets is not an invasion of private rights. *Kennelly* v. *Jersey City, 28 Vr. 293* (*Court of Errors*); *Roebling* v. *Trenton Railway Co., 29 Vr. 667*. So long as the defendant company confines its action to the building of its road on the highway within the lines laid down for it in the city ordinances, and to the running of its cars thereon in accordance therewith, the complainants and other abutting owners whose teams are impeded in turning from their carriage entrances into the street, or whose passage along the street is delayed by the frequent running of the cars, have no special rights against the user of the highways. The court of errors, in the *Roebling Case,* declared that there is no remedy for the abuting owner for annoyances and interferences resulting from a user which is consistent with the legitimate and proper use to which these public thoroughfares are devoted (*p. 674*).

The other ground for relief set up in the bill is the claim that the defendant company has located six trolley poles on the north side of Ferry avenue outside of the line of the highway and upon the premises of the complainants. The intrusion is shown, by the testimony of the complainants' surveyor (if it be assumed that the northerly half of the avenue is sixteen and a half feet wide), to be from one-tenth of a foot to one foot and one-tenth of a foot over the highway line and upon complainants' property, with the top of the poles inclining further over towards complainants' property. Whether these poles are within or without the line of the highway depends, of course, upon the purely legal question of boundary, which is disputed and unsettled. If the northerly half of the road is, as defendants claim, twenty feet wide, all these poles are within the highway. If there be a grievance, it is a concluded act of trespass or seizure of lands, for which an action of trespass or ejectment affords a full and adequate remedy. There

is no showing of any special equity which would justify the interference of this court by a mandatory injunction for the removal of the poles.

There is also a suggestion that the completion of the defendants' railway along the whole front of the complainants' property will raise the grade near their brick-kilns so that the complainants' land will, at the entrance to the avenue, be several feet below the grade of the avenue. But there is neither allegation nor proof that this raising of the grade is contrary to any city ordinance fixing the grade, and, in the absence of such a showing, the complainants' inconvenience is one which they must correct by raising the grade of their own property to correspond with that of the street.

Upon the whole case there is no exhibition of any ground for the action of a court of equity. I will advise a decree that the complainants' bill be dismissed, with costs.