In September, 1929, the defendant borough of Sea Girt, by ordinance, authorized the construction of a sixteen feet wide boardwalk on the easterly twenty-five feet of Ocean avenue as shown on "Map of Sea Girt, by Chas. F. Ingham, Engineer, Revised by Frederick J. Anspach, Engineer, 1877," at a cost of $40,000. This action was approved by referendum vote of the electorate at the general election on November 5th, 1929. Shortly thereafter the complainants, who are property owners in the borough, filed this bill seeking an injunction restraining the defendant from constructing the proposed boardwalk or taking any action under the ordinance, on the ground that the erection of "the proposed boardwalk and its approaches violates restrictions contained in their deeds and the deeds of their predecessors in title and encroaches upon their easements and private rights in that said road by such *Page 120 
erection would be used for purposes other than originally intended; that it prevents free access to and over said public highway; that it obstructs their light and air and view from said public highway and that it depreciates the value of their premises and that the erection of said boardwalk and approaches is illegal and generally violates the rights of complainants."
In 1875 the land now constituting the borough of Sea Girt was owned by the Sea Girt Land and Improvement Company and that company mapped and plotted the entire borough, laying it out in blocks and lots as shown on the map by Charles F. Ingham, engineer. That map was filed in the office of the clerk of the county of Monmouth and a number of conveyances of lots were made by the company by reference to said map. What is now Ocean avenue was designated on the map as Atlantic avenue. In 1877 the Sea Girt company, desiring to make some changes in the plan of its property, had a revised map or plan prepared by Frederick J. Anspach, engineer, and in February, 1878, filed the same in the office of the Monmouth county clerk. Coincident with the filing of the map an agreement was entered into between the company and nine individual grantees of lots by reference to the Ingham map, whereby said grantees consented to the proposed changes in the plotting of said property and released whatever rights they had acquired by reason of the making and filing of the Ingham map and reference thereto in their deeds of conveyance. In consideration of this consent and release the company agreed, amongst other things, that it would adopt and dedicate forever the streets and Crescent Park as shown on said map; that it would establish a set back building line on the west side of Atlantic Boulevard and that it would not in any way raise the grade of Atlantic Boulevard between Crescent Park and the ocean. It was also provided in said agreement that the revised map should be filed in the office of the clerk of Monmouth county "as a public road and evidence of the laying out of said tract of land and dedication of said streets and Crescent Park as thereon represented." It does not appear that the revised map made *Page 121 
any substantial change in Atlantic avenue as shown on the original Ingham map (except possibly in front of block 7 which lies immediately to the eastward of Crescent Park and where the westerly line of the avenue was extended some distance to the eastward). All of the complainants are owners of lots in block 7 as shown on the Anspach map. The complainant Hulett is the owner of lot 11, block 7. The complainant Mann owns lot 10, block 7. The complainant Potter owns lot 12, block 7. The complainant Pruyn owns lots 13, 14, 15 and the complainant Gillan owns lots 16, 17, 18 and 19 in block 7. The original conveyances from the Sea Girt Land and Improvement Company to Hulett, Mann and Potter were made from the Ingham map prior to its revision by Anspach in 1877 and these deeds of conveyance contained no restrictions which are pertinent to this controversy. The original conveyances from the Sea Girt Land and Improvement Company for the Pruyn and Gillan lots were made in 1885 from the Anspach map. The conveyance for lot 13 in block 7 contains no restrictions. The deeds for lots 14, 15, 16, 17, 18 and 19 contain the following restriction:
"And the said party of the first part do hereby covenant, promise and agree to and with the said party of the second part, his heirs and assigns, that they, the said party of the first part, their successors and assigns, will not erect any structure in front of the premises hereby granted and conveyed, between the same and the ocean or therein, or use the said front of the premises otherwise than as a public avenue and promenade."
In 1885 Atlantic avenue to the eastward of block 7, or at least a considerable portion of it, was graded at what was then the natural level of the ground above mean high water mark of the abutting properties. At that time there were blue flagstone sidewalks and flag or wooden curbs constructed along the westerly side of Atlantic avenue in front of a portion of block 7. These sidewalks and curbs, or some of them, still remain in their original location. At the present time the elevation of Atlantic avenue from Brooklyn avenue south to Trenton Boulevard, and in front of block 7, above mean high water mark, is considerably lower than it was at the *Page 122 
time of the filing of the Ingham and Anspach maps, and in 1885, the date of the conveyances to Pruyn and Gillan. This is due to the inroads of the ocean. The elevation of the proposed boardwalk is eighteen and two-tenths feet above mean tide level and this varies from eight to eleven feet above the elevation of the sand directly thereunder in front of block 7, and it is from one to one and one-half feet below the level of the sidewalks above referred to.
The ordinance adopted by the defendant borough contained this provision:
"That Ocean avenue, as laid out one hundred feet in width easterly from the east property lines of blocks one to seven inclusive on the official maps of the borough of Sea Girt, be and the said one hundred feet width is hereby subdivided, the most eastwardly twenty-five feet width thereof being hereby apportioned for use for sidewalk, boardwalk and footway purposes from a point one hundred forty-two feet north of the north line of Beacon Boulevard to the south line of Trenton Boulevard." (That such subdivision was a lawful exercise of municipal authority, see State, c., v. Morristown, 33 N.J. Law 57, andBudd v. Camden Horse Railroad Co., 61 N.J. Eq. 543.) It is proposed to construct ramp approaches to the boardwalk at each street intersection. These approaches are designed to be constructed on piling with a slight incline from the level of the street to the level of the boardwalk. It is proposed also to construct steps from the easterly side of the boardwalk to the strand at intervals along its entire length. The length of the proposed boardwalk is three thousand four hundred forty-five feet and it appears from the plan that there is already constructed at Beacon Boulevard a walk extending southwardly approximately one hundred feet. The proposed new boardwalk connects with this existing walk and extends both north and south. It is conceded by both parties that Atlantic avenue is a public highway, and that the first work done by the borough on this highway was in 1924.
The complainant seeks relief upon two theories: first, that the construction of the proposed boardwalk and approaches *Page 123 
violates the restrictions in the deeds, as above quoted; and second, that, irrespective of this restrictive clause, the private rights of the complainants arising from conveyances of lots abutting Atlantic avenue will be violated by the proposed construction. It is argued that aside from the restrictions the complainants have a right to free passage over Atlantic avenue north, south, east and west, unobstructed and uninterfered with by the boardwalk and its approaches. It is conceded that in traversing this avenue at its depressed level in front of block 7 in any directon, and except upon the boardwalk itself, it will be necessary to go under or over the boardwalk or its approaches. It is also conceded that at the present time Atlantic avenue for almost its entire length is impassable for vehicles because of its condition, due in some measure at least, to the inroads of the ocean. Abnormal high tides wash Atlantic avenue east of block 7.
The first question to be considered is whether or not the complainants have any right to enjoin the defendant by reason of the restrictions above quoted. It is clear that only two of the complainants, Pruyn and Gillan, have any rights under those restrictions, no such restrictions being contained in the deeds of the other three complainants or their predecessors in title. The restrictions referred to were not imposed until 1885. Atlantic avenue had been effectively dedicated to the public in 1875 by the filing of the Ingham map and by conveyances by reference thereto, and rededicated in 1878 by the filing of the Anspach map and conveyances by reference thereto. It does not appear that there was ever any formal acceptance by the borough of these acts of dedication, but the fact of dedication cannot be denied and once that fact is established such dedication is irrevocable, except upon express rejection or vacation by the lawfully constituted authorities. And while the exercise of the public rights resulting from dedication "may be suspended and lie dormant until such time as, in the judgment of proper legal authority, public exigencies require their possession and use," once the owner of property dedicates it to public use he cannot recall that dedication, either in whole or in part, except by consent of the *Page 124 
municipality acting in behalf of the public. Dodge Bliss v.Jersey City, 105 N.J. Eq. 545; Long Branch v. Toovey,104 N.J. Law 335; The Trustees of the Methodist Episcopal Church ofHoboken v. The Mayor and Common Council of the City of Hoboken,33 N.J. Law 13. The subsequent imposition by the Sea Girt Land and Improvement Company of the restriction contained in the Pruyn and Gillan deeds was an ineffectual attempt to subtract from the public right which had accrued by virtue of the previous dedication. It follows that these complainants, as against the public represented by the municipality, acquired no rights by virtue of that covenant.
Aside from this, however, I think it can be clearly demonstrated, and I am of the opinion that the covenant was never intended to prohibit an improvement such as is here contemplated. The agreement of February 21st, 1878, provided that the company would not raise the grade of Atlantic avenue. The grade referred to was that then in existence. The boardwalk will not raise that grade. The word "structure" (or "obstruction" as it is in some of the deeds) means, in my judgment, something erected in the avenue above the grade as it existed in 1885 and which will interfere with the use of the street as a promenade or will obstruct the view of the abutting property owners. The proposed structure is not above the grade, does not obstruct the view, and does not interfere with the use of the street as "an avenue and promenade." On the contrary it makes available for such use a portion of the street not now usable for street purposes at all.
Note, also, that the covenant is binding upon the grantor "its successors and assigns." The dedication having preceded the covenant, it cannot be said that the municipality is either a successor or assign within the meaning of those words as used in the covenant.
I will next consider the private rights of the complainant as abutting land owners and irrespective of the restrictive covenant.
It is claimed that the complainants' private rights in Atlantic *Page 125 
avenue are invaded because their easements are destroyed; free access to and over the public highway is denied; light, air and view are shut off, and that their property is depreciated in value. It seems clear, however, that their easements are not destroyed to any greater degree than are the easements of all other members of the public at large. They still have free access to the avenue and the passage over and on the avenue is not interfered with except to the extent that they are required to pass over or under the boardwalk or its approaches, if they choose to walk on the sand; but, as the roadway is now usable only for pedestrians, and as the proposed improvement will result in greater facility in that use, it cannot be said that the complainants are injured in this respect, and there is no obstruction to complainants' air and view. The testimony shows clearly that their properties are all at an elevation considerably above the level of the sidewalks which were laid years ago and that the street level of the avenue is slightly below the sidewalk level. The proposed level of the boardwalk is from one to one and one-half feet below the sidewalk level so that there is no possibility of any obstruction to complainants' light, air or view except so far as the view may be obstructed when the complainants look down toward the strand.
Complainants' contention under this head is based primarily upon the language of the court in Booraem v. North HudsonCounty Railway Co., 40 N.J. Eq. 557. In that case the court said, at page 564:
"The private rights of the several grantees precede the public right, and are the source from which the public right springs. * * * and this private right of way in the grantees is wholly distinct from, and independent of, the right of passage to be acquired by the public."
But this language is not at all applicable to the present issue. There the court had under consideration rights arising from a dedication of a highway by means of conveyances to private persons. Those conveyances were the source of the public right, but here the public right arises primarily, not from an implied covenant in complainants' deeds, but by *Page 126 
dedication to the public by the filing of the Ingham and Anspach maps. The rights of the public antedate those of the complainants and are superior to them. They do not have their source in the private rights of the complainants. Under such circumstances the public right is paramount and that of the abutter subordinate.Halsey v. Rapid Transit Street Railway Co., 47 N.J. Eq. 380.
In further support of this contention, counsel for complainant cites the following New Jersey cases: Bechtel v. Carslake,11 N.J. Eq. 500; Barnett v. Johnson, 15 N.J. Eq. 481; Bridgewater
v. Ocean City Railroad Co., 62 N.J. Eq. 276; Lennig v. OceanCity Assn., 41 N.J. Eq. 606; Dill v. Board of Education,47 N.J. Eq. 421; M.E. Church v. Pennsylvania Railroad Co., 48 N.J. Eq. 452; Herold v. Columbia Investment, c., Co., 72 N.J. Eq. 857; United New Jersey Railroad and Canal Co. v. Steel Co.,85 N.J. Eq. 7; Bozarth v. Egg Harbor, 89 N.J. Eq. 26;Marlborough-Blenheim v. Atlantic City, 98 N.J. Eq. 130;Beecher v. Newark, 64 N.J. Law 475; Bork v. United New JerseyRailroad and Canal Co., 70 N.J. Law 268; Ocean City Land Company
v. Ocean City, 73 N.J. Law 493; Atlantic and Suburban RailwayCo. v. State Board of Assessors, 80 N.J. Law 83; Union TowelSupply Co. v. Jersey City, 99 N.J. Law 52.
I have examined all these cases and I do not consider that any of them support complainants' point. They all involve rights arising from express or implied covenants, or the decisions are based upon the doctrine of estoppel, and are not applicable here. In almost every one of the cases, however, the public right in a dedicated street is recognized as superior to the private rights of an abutting property owner. In some of the cases, notablyBarnett v. Johnson and Union Towel Supply Co. v. JerseyCity, a purpresture was involved and the complainant asserted the public as well as his private rights. The use here complained of is a public as distinguished from a private use of the public highway which was condemned in those cases. In complainants' argument some stress is laid upon the language of Vice-Chancellor Emery in United New Jersey Railroad and Canal Co. v. Steel *Page 127 Co., to the effect that "until there is an acceptance of the street by some municipal act or by public usage the public acquire no rights therein and is subject to no duties by reason of the dedication." But an examination of that case and the authorities upon which Vice-Chancellor Emery relied indicates that it was not intended in any of those decisions to state the rule as broadly as is contended for by the complainants. Undoubtedly what was meant by the language quoted was that the public acquired no rights which imposed a corresponding obligation, such as of repair, on the public.
The public rights in Atlantic Boulevard or Ocean avenue being superior to the private rights of the complainants, it follows that the complainants are not entitled to relief so long as the municipality is acting lawfully and in the exercise of powers conferred upon it by the legislature. That it is so acting will be seen by reference to "An act concerning municipalities" (P.L.1917 ch. 152 p. 318; 2 Cum. Supp. Comp. Stat. subject 136), commonly known as the "Home Rule act," article 20, section 2001, especially subsections c, d and f; article 22, section 2201, and article 25, sections 2501, 2540a. See, also, Ninth Street PierCo. v. Ocean City, 6 N.J. Mis. R. 227, where it was held that a municipality had authority under the Home Rule act to build a boardwalk and to acquire land for that purpose. It is elementary that a municipality has power to establish the grade of any public thorofare within its limits and to change and re-establish the grade as the public need requires. And as to what the public need requires the governing body of the municipality are the sole judges. "The only restriction upon the power of the municipal authorities is that they cannot appropriate them [public highways] to a purpose incompatible with the ends for which they were established." Chapman v. Albany Railroad, 10 Barb. 360, cited with approval in Stoudinger v. Newark, 28 N.J. Eq. 187.
It will be noted that the language of the restrictions expressly provides for "a public avenue and promenade" and the word promenade may reasonably be said to contemplate a boardwalk. *Page 128 
In Halsey v. Railway Co., supra, it was held that by the taking of land for a street the public acquires the right to use it for travel not only by such means as were in use when the land was acquired but by such other means as new wants and improvements of the age may render necessary, and that any use of a street which is limited to an exercise of the right of passage, and which is confined to a mere use of the public easement, whether it be by old methods or new and which does not, in any substantial degree, destroy it as a means of free passage common to all the people, is a legitimate use and within the purpose for which the public acquired the land; and that an individual cannot maintain an action for injury caused by an obstructed highway unless he suffer some private, direct and material damage beyond the public at large as well as damage otherwise irreparable. Mere diminution of the value of his property by the nuisance, without irreparable mischief, will not furnish any foundation for equitable relief.
In Trustees, c., v. Hoboken, 33 N.J. Law 13 (at p. 19), the court said:
"But within the limits of the purposes and uses for which the dedication is made, to regulate the use, the authority of the local corporate authorities is unlimited, against which no mereprivate right can be set up."
(Italics mine.)
In Stoudinger v. Newark, supra, it was held that if land be dedicated to the public for street purposes and it is accepted, the public right is complete and the lands may be appropriated to any use to which a street acquired in any other mode can lawfully be put and that such streets might be lawfully used for the construction of sewers, whether the public right was acquired by condemnation or by dedication. And in Sea Isle City Realty Co.
v. Sea Isle City, 79 N.J. Law 459, it was held that the language of a dedication to a seaside resort that the locus inquo "shall forever remain open and unobstructed for public use" is not inconsistent with the erection thereon of a music pavilion for public entertainment. *Page 129 
It does not appear to me that the complainant will suffer any "private, direct or material damage" from the construction of the proposed boardwalk "beyond the public at large." The use of the street as proposed by the municipality is not inconsistent with the purposes of its dedication and the borough is clearly acting within the scope of its lawful authority. The argument of complainant based upon so-called private rights cannot be sustained.
There is another ground, however, upon which the relief sought should be denied. While undoubtedly this court has jurisdiction to entertain this bill because of the restrictive covenants involved, if for no other reason, "the principle is universal, that where the rights of an individual are invaded, by the acts of persons clothed with authority, and who exercise that authority illegally, the persons aggrieved must seek redress bycertiorari." Tucker v. Freeholders, 1 N.J. Eq. 282. This rule has been repeatedly stated by the courts of this state and lately by Vice-Chancellor Backes in this court in E.M. Harrison Market,Inc., v. Town of Montclair, 105 N.J. Eq. 222.
I will advise a decree dismissing the bill of complaint. *Page 130